ZEHMER, Judge.
D.J.G., a juvenile, appeals his conviction and sentence on a delinquency charge of criminal conspiracy to commit battery. He argues that the evidence was insufficient to convict him of this charge. We reverse.
On December 24, 1986, appellant was charged by amended petition with battery and conspiracy to commit battery. Both charges arose out of the same incident on October 9, 1986. Essentially, D.J.G. was charged with committing a battery against John Roussell, and with conspiring with Julie Logsdon to perpetrate the offense of battery. At the adjudicatory proceeding held January 14, 1987, witnesses for the state included Julie Logsdon and John Roussell, the victim. Appellant testified in his own defense.
Julie Logsdon testified, on direct examination by the prosecuting attorney, that on October 9, while she was having dinner with appellant, he said he wanted to see John Roussell and asked her to take him to Roussell’s house. According to Logsdon, D.J.G. said Roussell had just been released from prison and that he [D.J.G.] had given Roussell some speakers to use, but that they had had a “falling out” and appellant “wanted to shake [Roussell] up a little bit.” When asked what D.J.G. meant, Logsdon said, “I guess I just assumed he would threaten him.” When Logsdon was asked whether appellant told her what he intended to do when he saw Roussell, she replied, “He said there would be no physical contact. That’s the stipulation that I took him out.”
Logsdon then called Roussell and requested that he meet her outside his home. Between 9 and 10 p.m. she drove appellant to the subdivision where Roussell lived and let him out of her car on a cul-de-sac approximately a block from Roussell’s house. Logsdon proceeded to Roussell’s house, where he got into her car. Logsdon, telling Roussell she “had to go to the restroom,” drove back to the spot where she had left appellant, parked her car, and got out. She testified, “And [D.J.G.] came around the back of the car to the passenger side, and at that time I got back in the car, and when I looked over there were arms flying.” She testified she heard scuffling, but no voices, and then twice said, “Come on [D.J.G.].” Appellant got into the car and Logsdon drove to a store, where she saw blood on appellant’s left arm. Appellant went in and washed, and she took him home. She testified she did not go back to check on Roussell, and stated she did not see a weapon in appellant’s hands.
On cross-examination, Logsdon said no charges had been brought against her as a result of the incident and that she did not see what started the fight.
Roussell testified that about a year before this incident Logsdon had been his girlfriend. He said that Logsdon called him about 8 or 8:30 in the evening and asked to meet with him outside his house. When she pulled up in the driveway, Rous-sell got in the car and they talked. Then, *1026 he testified, Logsdon started the car, drove to a dead-end circle, turned the car radio up loud, got out and walked to the rear of the car. Roussell said he saw someone come up to the bushes behind Logsdon, and he called out to warn her. Roussell stated:
And so she acted like it was no big deal, like she knew they were coming up. So they walked up to the car, walked around to the side of the car. That’s when I recognized [D.J.G.]_ Then he had something in his hand and he yelled at me to get out of the car.
QUESTION: OK, what did he have in his hand?
ANSWER: It looked like a piece of metal pipe about that long.
Roussell said that as he got out of the car appellant swung the pipe at him. Roussell ducked, and appellant swung again and hit him the second time. Roussell said he was cut on the head and was bleeding. He attempted to fight, but had blood in his eyes. Then appellant bit his thumb. Rous-sell stated that appellant jumped in the car and they “took off, spinning the tires as they left.” Roussell said he walked back to his house and his mother drove him to the hospital. When asked if he knew any reason for the attack, Roussell said there was bad feeling between them because he had left appellant at Panama City a year before.
Appellant testified in defense that he arranged the meeting with Roussell in order to get some money because Roussell had sold some very expensive speakers that belonged to appellant. Appellant said that he also wanted to discuss the trip to Panama City with Roussell. Appellant stated he had no intention of fighting, but that his intention was to threaten “and try to get some money.” According to appellant, he had no weapon. He said Roussell got out of the car and swung. Appellant’s version was that Roussell tried to tackle him, they wrestled, and they fell to the ground. He theorized that the cut over Roussell’s eye was caused by striking the car door.
At the conclusion of the evidence and argument by counsel, the trial court denied motions for judgment of acquittal and held:
I find that the state has proved its case beyond a reasonable doubt. The circumstantial evidence is overwhelming that there was a conspiracy to place this victim in a situation where he could be battered. In considering the interests of the parties and their testimony, while thinking that the victim’s testimony is much more believable and the child’s testimony insofar as how the fight started is incredible. I hold that the state has proved its case beyond a reasonable doubt.
After hearing argument on appellant’s renewed motion for acquittal and motion for new trial, the trial court adjudicated appellant guilty on both charges and placed him on community control.
D.J.G. appeals this judgment, contending the court erred in adjudging him guilty of conspiracy. Appellant does not contest his conviction of the substantive offense of battery.
The law governing the sufficiency of the evidence to establish a criminal conspiracy charge is well settled and uncomplicated. Section 777.04, Florida Statutes (1986 Supp.) provides, “Whoever agrees, conspires, combines, or confederates with another person or persons to commit any offense commits the offense of criminal conspiracy.” The principles governing application of this statute have been quite accurately and succinctly summarized by Judge Baskin in Ashenoff v. State, 391 So.2d 289 (Fla. 3d DCA 1980):
Conspiracy under Section 774.04(3), Florida Statutes (1977) is defined as an express or implied agreement or understanding between two or more persons in order to accomplish a criminal offense.... Both an agreement and an intention to commit the offense are necessary elements.... Although proof of a conspiracy may be inferred from appropriate circumstances ... and proof of a formal agreement is not necessary ... a conspiracy may not be inferred from aiding and abetting alone_ “The tendency to make the crime so elastic, sprawling and pervasive as to defy meaningful definition” must be avoided....
*1027 The applicable law of conspiracy has been stated by this court:
Conspiracy is a separate and distinct crime from the offense which is the object of the conspiracy— Moreover, conspiracy is one step removed from an attempt to commit the offense which is the object of the conspiracy, and, thus is two steps removed from the actual commission of the substantive offense.... As such, evidence that a person aided and abetted another in the commission of an offense, although sufficient to convict the person as a principal in such offense under Section 777.011, Florida Statutes (1977), is insufficient to convict either person of a conspiracy to commit the subject offense....
391 So.2d at 291 (citations omitted).
The essence of a criminal conspiracy is the agreement to commit a criminal offense. The state concedes that there is no direct evidence of any conspiratorial agreement in this case, but argues that the conduct of D.J.G. and Logsdon before and after commission of the battery supports an inference that they had agreed before arriving at Roussell’s house to commit the battery upon Roussell. The state relies entirely upon the circumstances leading up to and surrounding the commission of the battery, as testified to by Logsdon and Roussell, as proof of appellant’s implied agreement with Logsdon that he would commit the offense of battery against Roussell.
Appellant argues that such inference is not permissible because Logsdon, the only alleged coconspirator, testified as a witness for the state and her testimony, that before she agreed to take D.J.G. to see Roussell he had agreed not to physically batter Roussell, is binding on the state and refutes the existence of the charged conspiracy.
Under section 90.608(1), Florida Statutes (1985), it is improper for the party calling a witness to attack his or her credibility unless the witness proves adverse. This section retains the traditional rule against impeaching a party’s own witness.[1] The rationale behind the statute has been expressed as follows:
Generally, attacks on the credibility of a witness have been permitted only by a party against whom the testimony is offered, and it has been improper for the party calling a witness to impeach the credibility of that witness. This rule resulted from a belief that the party who calls a witness to testify vouches to the court and jury for the credibility of that witness.
Ehrhardt, Florida Evidence, § 608.2 (2d ed. 1984).
In situations where a state witness at trial gives testimony of his version of the event that coincides with the defendant’s version, and the state does not assert at any point that the witness is adverse, Florida courts have held that the state is bound by the testimony adduced, entitling defendant to a directed verdict of acquittal. Weinstein v. State, 269 So.2d 70 (Fla. 1st DCA 1972), cert. denied, 273 So.2d 764 (Fla.1973) (defendant entitled to judgment of acquittal where state witness, never asserted as adverse by the state, gave testimony that was consistent with defendant’s hypothesis of innocence); Majors v. State, 247 So.2d 446 (Fla. 1st DCA 1971), cert. denied, 250 So.2d 898 (Fla.1971) (testimony of four prosecution witnesses that defendant had not committed the crime was binding on the state and created a reasonable doubt of innocence as a matter of law); Hodge v. State, 315 So.2d 507 (Fla. 1st DCA 1975). In Hodge the court held:
The State produced two witnesses, appellant’s son and the friend, who testified that the weapon discharged when the deceased pulled on the barrel. This was corroborated by appellant’s own testimony. Moyd, also testifying for the State, said that as Woodfaulk was trying to gain entry into the bar, the door suddenly flew open and an unknown person stuck a gun out and fired hitting Wood-faulk. Moyd stated that he was unable to see whether Woodfaulk had a pistol in *1028 his hand or if he grabbed the barrel of the shotgun. Since the State at no point asserted that the appellant’s son or friend were adverse witnesses, it was bound by their testimony. Weinstein v. State, 269 So.2d 70 (1st D.C.A. Fla.1972).
315 So.2d at 509 (Emphasis added). See also Davis v. State, 90 So.2d 629 (Fla.1956) (no justification for believing testimony of a state witness as to certain matters in one instance and disbelieving his testimony as to other facts).
In the instant case, the state’s key witness on the conspiracy charge testified that she agreed to take appellant to see the victim so that he could threaten and shake him up. She positively stated that there was a stipulation between her and appellant that no physical contact was to occur. As in Weinstein and Hodge, the state never asserted or pointed out that this witness’s testimony was adverse to its case; thus, the state became bound by the evidence it presented. Moreover, as in Majors and Weinstein, the testimony of the state’s witness created a reasonable hypothesis that the witness and appellant never conspired to commit battery. Logsdon’s testimony corroborated appellant’s assertion that he never agreed nor intended to batter the victim. This state’s witness testified that D.J.G. did not have a weapon with him in the car. Although Roussell testified that D.J.G. did have a weapon when he jumped the victim, D.J.G. could have obtained a stick or pipe after Logsdon left him at the cul-de-sac and then used it to strike Roussell. So the fact that a weapon was used in the battery does not support an inference of a prior agreement to commit battery. In addition, as in Davis v. State, 90 So.2d 629, no justification is shown in this case for, on the one hand, believing the state’s witness as to how she called and took the victim to meet appellant, while, on the other, disbelieving her or finding that she was not credible as to the agreed purpose of the meeting.
To summarize, Logsdon’s testimony has left the state’s evidence legally insufficient to prove the conspiracy charged. To hold otherwise would be to give approval to an inference of guilt based on pure speculation. Logsdon’s testimony that D.J.G. agreed not to physically strike Roussell directly refutes any permissible inference that a conspiracy ever took place. There was no direct evidence that she and D.J.G. had agreed D.J.G. would commit a battery. At the very best, under the state’s evidence, the only agreement that could possibly be inferred is one to commit assault by threatening (shaking up) the victim, without physically touching him. That does not constitute a conspiracy to commit battery.
REVERSED and REMANDED.
WIGGINTON, J., concurs.
JOANOS, J., dissents with written opinion.

. See Law Revision Council Note to section 90.-608, Fla.Stat.Ann.