566 So.2d 1383 (1990)
J.L., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 89-3260.
District Court of Appeal of Florida, First District.
September 21, 1990.
*1384 Barbara Linthicum, Public Defender, and Michael Minerva, Asst. Public Defender, for appellant.
Robert A. Butterworth, Atty. Gen., and Amelia L. Beisner, Asst. Atty. Gen., for appellee.
PER CURIAM.
J.L. appeals a disposition order withholding adjudication of delinquency and placing her on community control due to her commission of the offenses of burglary of a conveyance, grand theft, and petit theft. She argues that the trial court erred in failing to acquit her of the charged offenses on the ground that a state witness gave contradictory testimony which corroborated her theory of innocence. We disagree and affirm.
On July 28, 1989, appellant, J.L., a juvenile, and Michael Dumas attended a party at a friend's home. Dumas testified that he fell asleep during the party, and that his wallet and the keys to his truck were in his pockets when he went to sleep. When he awoke, he found that his wallet, which had had $200 in it, and the keys to the truck were gone. It is undisputed that J.L. drove Dumas' truck after Dumas had fallen asleep, that it broke down while she was driving it, and that she returned it during the early morning hours. J.L. testified that Dumas gave her permission to take the truck. However, Dumas denied that he had given anyone consent to drive his truck, and asserted that his truck was damaged, and that he could not start it following its return.
J.L. was charged as a juvenile with unlawfully entering or remaining in the truck with the intent to commit theft (Count I); theft of the truck (Count II); petit theft for obtaining, using, or endeavoring to obtain or use Dumas' vehicle keys and/or money (Count III); and malicious mischief by unlawfully, willfully, and maliciously injuring or damaging the truck (Count IV). She was found guilty on the first three counts, and acquitted on the fourth.
The primary dispute in this case is whether J.L. had the requisite unlawful intent to steal Michael Dumas's truck and keys. See State v. Dunmann, 427 So.2d 166 (Fla. 1983). If J.L. took the property under the honest but mistaken belief that Dumas had given her permission, she cannot be found guilty of theft. Kilbee v. State, 53 So.2d 533 (Fla. 1951); Board of Regents v. Videon, 313 So.2d 433 (Fla. 1st DCA 1975). And, of course, if J.L. did not have the intent to steal, then the burglary finding would also be vulnerable.
Lori Privett, a witness for the state, testified on direct examination that J.L. took the truck and gave Privett a ride to a friend's house, and that the truck broke down on the way. When asked on cross-examination if she had listened to a discussion between Michael Dumas and J.L., Privett answered that she had heard J.L. ask Dumas if she could drive his truck, and that he had replied that she could if she could find his keys. The only other witness who claimed to overhear the alleged exchange between Dumas and J.L. was Wendy Harden, a defense witness who, like J.L., testified that Dumas said J.L. could use his truck.
J.L. relies upon a line of cases exemplified by D.J.G. v. State, 524 So.2d 1024 (Fla. 1st DCA 1987), review denied, 525 So.2d 880 (Fla. 1988), wherein this court said at page 1027:
In situations where a state witness at trial gives testimony of his version of the event that coincides with the defendant's version, and the state does not assert at any point that the witness is adverse, Florida courts have held that the state is bound by the testimony adduced, entitling defendant to a directed verdict of acquittal.
See also Weinstein v. State, 269 So.2d 70 (Fla. 1st DCA 1972), cert. denied, 273 So.2d 764 (Fla. 1973); Hodge v. State, 315 So.2d 507 (Fla. 1st DCA 1975); and Majors v. State, 247 So.2d 446 (Fla. 1st DCA 1971), cert. denied, 250 So.2d 898 (Fla. 1971).
J.L. asserts that the above cases mandate that a judgment of acquittal be granted where a state's witness testifies in a manner consistent with the defendant's *1385 theory of innocence. Closer examination of those opinions, however, indicates that the cases do not stand for that proposition.
In D.J.G., Weinstein, and Hodge, although in each case the testimony of the state's witness or witnesses was consistent with the defendant's theory of innocence, no evidence was presented by the state which directly contradicted the exculpatory testimony. In the instant case, however, the state presented direct evidence from the victim that the defendant did not have permission to operate the victim's vehicle; therefore, D.J.G., Weinstein, and Hodge are inapplicable.
In Majors, where two people had been charged with aggravated assault, the state presented four witnesses who testified that one defendant had actually fired the gun, then presented four other witnesses who testified that the other defendant had fired the gun. The state made no attempt to establish who actually pulled the trigger; the jury had to decide which person was guilty. In Majors, this court agreed with the defendant that the conflicting testimony "created a reasonable doubt as a matter of law."
It would be a mistake to extend the teaching of Majors much beyond the rather bizarre scenario with which this court was faced in that case. The following excerpt from Judge Carroll's opinion is instructive in this respect:
Each defendant was forced into the position of trying to prove that the other defendant was the guilty party, while the prosecutor could sit back and watch the two defendants "fight it out" before the jury as to who was guilty. This, we think, was an unfair burden to place on the defendant under our system of justice. Under that system there is no authority for the procedure used in this case, which we believe denied due process of law to the appellant, so the judgment appealed from must be reversed.
The record does not disclose, of course, the precise reason why the prosecution elected to proceed as it did, charging the appellant and Bellamy jointly with the crime of aggravated assault. Conceivably, the prosecution, in view of the conflicting testimony as to who shot Johnson, decided to charge and try both defendants and let them fight it out before the jury, and let the jury decide who is guilty. Perhaps the prosecution had in mind the procedures sometimes permissible in civil actions in which a plaintiff files a negligence action jointly against several defendants, who find themselves scrapping before the jury as to who is liable for the plaintiff's injuries; or in which an interpleader action is filed by an insurer, which places the disputed funds into the registry of the court, and sues the claimants to the funds, so that the insurer can step aside and let the claimants fight for their claims before the court. Neither of these procedures is permissible in criminal law, mainly for the fundamental reasons that an accused is presumed to be innocent, that the burden is upon the prosecution to prove beyond a reasonable doubt that the accused is guilty of the crime charged, and that every accused is entitled to a fair trial.
247 So.2d at 448. In the instant case, in which J.L. was the sole defendant charged, there were no prosecutorial maneuverings such as were involved in Majors. Moreover, it can hardly be said that the evidence was so contradictory that a reasonable doubt was created as a matter of law.
There is a further reason why the above cases are distinguishable. Count IV, charging J.L. with malicious mischief, requires proof that is independent of the proof necessary to establish commission of the offenses alleged in Counts I, II, and III, charging J.L. with burglary and theft. J.L. consequently could have been adjudicated delinquent under Count IV alone, regardless of whether Dumas consented to give J.L. temporary possession of his vehicle. Accordingly, the state was entitled to elicit evidence from Privett that placed J.L. in possession of the truck when it was damaged. Although Privett's testimony on direct examination may have related as well to proof of the first three counts  placing J.L. in a truck alleged to have been illegally entered and taken  her testimony *1386 nonetheless was circumstantial evidence which was relevant to the offense charged in Count IV.[1]
Consequently, notwithstanding whether Privett's testimony on cross-examination could be considered adverse to the state's proof of Counts I, II, and III, her testimony was clearly not adverse to the state's version of the evidence supporting the offense alleged in Count IV.[2] Therefore, the trial court did not err by refusing to acquit appellant.
AFFIRMED.
ERVIN, NIMMONS and WOLF, JJ., concur.
NOTES
[1] The state's election to join separate offenses, dependent upon different elements of proof, in separate counts within the same charging document, was entirely consistent with the provisions of Florida Rule of Criminal Procedure 3.150(a), permitting joinder of two or more offenses if they "are based on the same act or transaction or two or more connected acts or transactions." See also Brown v. State, 468 So.2d 325, 326 (Fla. 2d DCA), review denied, 476 So.2d 672 (Fla. 1985).
[2] Compare D.J.G., Hodge, Weinstein, and Majors, wherein the defendants were each charged with only one offense.